IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

LISSA DAWN FARRIS,            )
                              )
         Plaintiff,           )
                              )
vs.                           )        Case No. 5:12-cv-3416-TMP
                              )
CAROLYN W. COLVIN,            )
Commissioner of Social Security, )
                              )
         Defendant.           )

# MEMORANDUM OPINION

The plaintiff, Lissa Dawn Farris, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB").  Ms. Farris timely pursued and exhausted her administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).

Ms. Farris was forty-four years old at the time of the Administrative Law Judge's ("ALJ") decision, and she has a year of college education.  (Tr. at 33.)  Her past work experiences include employment as an advertising account executive or representative.  (Tr. at 53).  Ms. Farris claims that she became disabled on February 27, 2007, due to back pain, neck pain, shoulder pain, bipolar disorder, depression, anxiety and panic attacks, and post-traumatic stress disorder ("PTSD").  (Tr. at 31-32).

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process. *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). The first step requires a determination of whether the claimant is "doing substantial gainful activity." 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If she is, the claimant is not disabled and the evaluation stops. *Id.* If she is not, the Commissioner next considers the effect of all of the claimant's physical and mental impairments combined. *See* 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled. *Id.* The decision depends upon the medical evidence in the record. *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971). If the claimant's impairments are not severe, the analysis stops. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's impairments fall within this category, she will be found disabled without further consideration. *Id.* If they do not, a determination of the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step. 20 C.F.R. §§ 404.1520(e), 416.920(e). Residual functional capacity is an assessment, based on all relevant evidence, of a

claimant's remaining ability to do work despite her impairments. 20 C.F.R. § 404.1545(a).

The fourth step requires a determination of whether the claimant's impairments prevent him or her from returning to past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). If the claimant can still do her past relevant work, the claimant is not disabled and the evaluation stops. *Id.* If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.* Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience, in order to determine if she can do other work. 20 C.F.R. §§ 404.1520(a)(4)(v) 416.920(a)(4)(v). If the claimant can do other work, the claimant is not disabled. *Id.* The burden of demonstrating that other jobs exist which the claimant can perform is on the Commissioner; and, once that burden is met, the claimant must prove her inability to perform those jobs in order to be found to be disabled. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

Applying the sequential evaluation process, the ALJ found that Ms. Farris has not been under a disability within the meaning of the Social Security Act from the February 27, 2007, date of onset through the date of his decision on April 4, 2011. (Tr. at 21). In reaching that finding, he first determined that Ms. Farris has not engaged in substantial gainful activity since the alleged onset of her disability. (Tr. at 14). At the second step of the sequential analysis, the ALJ found that the plaintiff has severe impairments of major depressive disorder with anxiety; panic disorder;

personality disorder; lumbar spondylosis; and lumbar scoliosis. However, at the third step of the analysis, he found that these impairments did not meet or medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 14). As such, the ALJ was required to determine the plaintiff's RFC. In doing so, he determined that she has the following residual functional capacity:

> [T]he claimant has the residual functional capacity to perform sedentary work…, except … that the claimant can lift or carry up to 10 pounds occasionally and 5 pounds frequently. She can sit for up to six hours and stand/walk for up to 2 hours in an 8-hour workday and must be afforded a sit/stand option. She can never use a ladder, rope, or scaffold and can occasionally crawl or use a ramp or stairs. She must avoid concentrated exposure to extreme heat or cold and hazards. She can perform simple routine, repetitive tasks with only occasional public contact and low stress (defined only as occasional change in work setting and decision making).

(Tr. at 16).

According to the ALJ, Ms. Farris is unable to perform any of her past relevant work, she is a "younger individual," and she has at least a high school education. (Tr. at 20). He determined that "transferability of skills is not material to the determination of disability" in this case "because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills." (Tr. at 20). At the fifth stage of the analysis, the ALJ found that Ms. Farris has the residual functional capacity to perform a significant range of sedentary work. (Tr. at 20). Even though Plaintiff cannot

perform the full range of sedentary work, the ALJ used the Medical-Vocation Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2, as well as the testimony of a vocational expert, as a basis for finding that there are a significant number of jobs in the national economy that she is capable of performing, such as assembler, grader/sorter, and machine tender.  (Tr. at 21).  The ALJ concluded his findings by stating that Plaintiff was not under s disability as defined in the Social Security Act from February 27, 2007, through the date of his decision. (*Id.*)

## II.   Standard of Review

This court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied.  *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).  The Court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions.  *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).  The Court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner.  *Id.*  "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being

supported by substantial evidence.'" *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).  Indeed, even if this Court finds that the evidence preponderates against the Commissioner's decision, the Court must affirm if the decision is supported by substantial evidence.  *Miles*, 84 F.3d at 1400.  No decision is automatic, however, for "despite this deferential standard [for review of claims] it is imperative that the Court scrutinize the record in its entirety to determine the reasonableness of the decision reached."  *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987).  Moreover, failure to apply the correct legal standards is ground for reversal.  *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

      The court must keep in mind that opinions such as whether a claimant is disabled, the nature and extent of a claimant's residual functional capacity, and the application of vocational factors "are not medical opinions, . . . but are, instead, opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of a case; i.e., that would direct the determination or decision of disability."  20 C.F.R. §§ 404.1527(e), 416.927(d).  Whether the Plaintiff meets the listing and is qualified for Social Security disability benefits is a question reserved for the ALJ, and the court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner."  *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).  Thus, even if the court were to disagree with the ALJ about the significance of certain facts, the court has no power to reverse that finding

as long as there is substantial evidence in the record supporting it.

## III.  Discussion

Ms. Farris alleges that the ALJ's decision should be reversed and remanded for two reasons: first, she contends that the ALJ failed to recognize and consider treatment notes from plaintiff's psychiatrist, Dr. Alrefai; and second, because new and material information in the form of a medical opinion was submitted to the Appeals Council which, if considered by the ALJ, would have changed his opinion.  (Doc. 8). Because the ALJ failed to consider this new medical evidence, plaintiff contends his finding of her RFC is not based on substantial evidence and that he did not adequately factor the effects of her mental illness into his RFC determination when he found that she was capable of performing a range of sedentary work with limitations. (Doc. 8).

### A.  ALJ Failed to Consider All of the Evidence Available

Plaintiff's first challenge to the ALJ's decision focuses on the absence of any mention of Dr. Alrefai's treatment of the plaintiff, suggesting that the ALJ failed to make his RFC determination on all of the evidence presented.  Although the decision by the ALJ does not mention Dr. Alrefai or Valley Behavioral, it appears to be true that the administrative record contained treatment notes by Dr. Alrefai from Valley Behavioral, beginning in March 2010, at the time of the hearing.  These notes were forwarded to the Office of Disability Adjudication and Review in Florence, Alabama,

in two letters by plaintiff's counsel, dated May 28, 2010, and January 18, 2011.  (Tr. at 319 and 332).[1]

The first set of treatment notes date to sessions with plaintiff on March 24 and April 26, 2010, but the notes are largely illegible.  (Tr. at 320-326).  It is possible to discern from the March 24 notes that Dr. Alrefai assessed plaintiff as depressed, anxious, and "constricted" although her thoughts were logical.  He diagnosed bipolar disorder and PTSD.  Similarly, on April 26, 2010, he rated her as having moderate anxiety and depression.  Her symptoms rated a 2 on a scale of 10, and her overall functioning was rated a 6 out of 10.  Strangely, under the heading "Diagnosis," Dr. Alrefai wrote for his Axis I diagnosis, "No $\Delta$," which the court can only guess to mean "No Diagnosis."  (Tr. at 321).

A second set of treatment notes were delivered in a letter from plaintiff's counsel on January 18, 2011, and these covered various treatment sessions from May 24, 2010, through November 22, 2010.  (Tr. at 333-354).  As with the other notes, the handwritten parts of these notes are essentially illegible, but they appear to report the same substantial ratings of plaintiff's condition.  Dr. Alrefai usually found the plaintiff's mood to be depressed and anxious, and her affect "constricted." She usually was assessed as having mild to moderate depression, anxiety, and concentration problems.  He rated the severity of her symptoms as a 2 or 3 on a scale of 10, and her

---

[1] Interestingly, there is another letter from plaintiff's counsel dated September 8, 2010, (Tr. at 327-331), in which he forwarded medical records from Riverside Counseling, which records are specifically mentioned in the ALJ's decision.

overall functioning was always a 5 or 6 on a scale of 10.

At the outset, the court concludes that Dr. Alrefai was one of the plaintiff's treating physicians, as that term is understood by the Commissioner. The Social Security regulations define a "treating physician" as one with an ongoing medical relationship with the claimant. The court of appeals has explained:

> [A] treating physician is one who not only provides (or has provided) the claimant with medical treatment or evaluation, but also has (or has had) an "ongoing treatment relationship" with the claimant. 20 C.F.R. § 404.1502. A claimant generally has an "ongoing treatment relationship" with a physician when medical evidence establishes that the claimant sees or has seen the physician "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the claimant's] medical condition(s)." Id.

*Nyberg v. Commissioner of Social Security*, 179 F. App'x 589, 591 (11th Cir. 2006). A treating physician is one who has an ongoing relationship with the claimant, and these notes plainly indicate that plaintiff met with Dr. Alrefai on a monthly basis from April 2010 until March of 2011 for mental health treatment.

Treatment notes from March 2010 through November 22, 2010, were part of the record before the ALJ at the time of the hearing, yet there is no reference to the notes or Dr. Alrefai's treatment or assessment of the plaintiff in the ALJ's decision. Absent some explanation from the ALJ why these treatment records were not considered, or were considered but rejected, the court cannot find that the ALJ has properly decided the plaintiff's claim on the basis of all the evidence. The *Nyberg* case

states the importance of the ALJ's consideration of a treating physician's opinion this way:

> In describing the proper evaluation of opinion evidence on disability claims, the Social Security Administration ("SSA") states the following:
>
>> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.
>
> 20 C.F.R. § 404.1527(d)(2).  Indeed, the ALJ "must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *see Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (*per curiam*) (ALJ must accord substantial or considerable weight to opinion of treating physician unless "good cause" is shown to the contrary); *Broughton v. Heckler*, 776 F.2d 960, 961–62 (11th Cir. 1985) (*per curiam*) (same); *see also Wiggins v. Schweiker*, 679 F.2d 1387, 1390 (11th Cir. 1982) (ALJ's failure to mention appellant's treating physician and the weight, if any, given to the treating physician's opinion constituted grounds for reversal).  An ALJ's "lack of explanation" for failing to address a treating physician's opinion is "particularly troublesome" when that physician was the claimant's "long-time treating physician."  *Ryan* [*v. Heckler*, 762 F.2d 939, 942 (11th Cir.1985)].

*Nyberg v. Commissioner of Social Security*, 179 F. App'x 589, 590-91 (11th Cir. 2006) (internal footnote omitted); *see also Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997) ("[T]he testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary.").  Because evidence

from the treating physician is particularly important, "The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).

Moreover, the failure of the ALJ to articulate his consideration and weighing of Dr. Alrefai's medical opinions is not subject to harmless error analysis. The failure to consider a treating physician's evidence prevents a reviewing court from assessing the impact of the overlooked evidence precisely because doing so requires reweighing the evidence, which is the province of the ALJ.

> Thus, we cannot say that the failure to address [a treating physician's] opinion was harmless without re-weighing the evidence and engaging in conjecture that invades the province of the ALJ. *See Moore* [*v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam)] (stating that, where ALJ failed to consider certain factors and indicate their impact on his ultimate conclusion as to claimant's residual functional capacity, we "[could not] even evaluate the Commissioner's contention that the ALJ's error was harmless"); *Wiggins*, 679 F.2d at 1390 (remanding where we were "unable to determine whether the ALJ applied the proper legal standard and gave the treating physician's evidence substantial or considerable weight or found good cause not to do so"); *Wilson*, 378 F.3d at 546 ("A court cannot excuse the denial of a mandatory procedural protection simply because, as the Commissioner urges, there is sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely.").

*Nyberg v. Commissioner of Social Security*, 179 F. App'x 589, 592 (11th Cir. 2006). Because a reviewing court is not allowed to reweigh the evidence, the only recourse for correcting a failure to consider evidence is to remand the matter to the ALJ for

reconsideration in light of the evidence. The court will remand this to the ALJ for further consideration in light of the evidence from Dr. Alrefai.

### B. Appeals Council's Consideration is Moot

Because the court has concluded that it must remand this matter to the ALJ for further consideration in light of evidence from Dr. Alrefai submitted before the ALJ's decision, it is unnecessary to address the plaintiff's second contention that the Appeals Council improperly failed to consider evidence submitted to it during plaintiff's appeal of the ALJ's adverse decision. Plainly, some evidence of Dr. Alrefai's treatment notes were submitted before the ALJ's hearing on March 10, 2011, and this evidence must be addressed by the ALJ. Whether other evidence submitted on April 6, 2011, should be considered is a matter the ALJ should address.

### IV. Conclusion

Based on the foregoing discussion, the court will vacate the denial of benefits by the Commissioner and remand this matter to the Administrative Law Judge for further consideration in light of evidence produced by one of plaintiff's treating physicians, Dr. Alrefai. A separate order will be entered.

DONE this 7th day of April, 2014.

_____
T. MICHAEL PUTNAM
U.S. MAGISTRATE JUDGE